UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 10-289-KSF

KEVIN SHEGOG,                                                                          PLAINTIFF,

V.                                          MAGISTRATE JUDGE'S
                                   REPORT AND RECOMMENDATION

JOSEPH MEKO, WARDEN,                                                        RESPONDENT.

Kevin Shegog brings this *pro se* habeas corpus action to challenge his incarceration on state convictions of first degree robbery and persistent felony offender in the first degree.   [R. 1]. Consistent with local practice, this matter has been referred to the undersigned for a Report and Recommendation.  The matter having been fully briefed, and for the reasons discussed below, it is recommended that the petition be denied.

FACTUAL AND PROCEDURAL BACKGROUND

On June 13, 2002, Kevin Shegog was convicted of first degree robbery and persistent felony offender in the first degree, and sentenced to twenty years imprisonment.   The Kentucky Supreme Court recounted the salient facts of the matter as follows:

> Appellant's convictions stem from a robbery that was committed on May 28, 2001, at a BP gas station in Highland Heights, Kentucky.  Joy Powell, a witness who was inside the gas station at the time of the robbery, stated that she observed an African American male wearing a red and white sports jacket and a nylon stocking on his head pass by the front glass window and then enter the store.  Once inside, Powell stated that the man grabbed her and, as he pulled the stocking down over his face, announced that he had a gun.  Powell was ordered behind the counter with the store clerk and both were told to lie on the floor.  After taking the money from the register, the robber fled the scene.  Powell's husband Steve, who had been pumping gas, observed the man get into a dark colored vehicle with a vanity license plate that read "Shegog."

* * *

The day after the robbery, Powell was shown a photo line-up consisting of computer-generated images. Powell stated at the time she was unable to identify the robber due to the quality of the pictures. Police thereafter obtained an actual photograph of Appellant and compiled a second photo array. Powell initially told Detective Thomas that she still could not identify the robber. However, as Detective Thomas was getting into his car to leave the Powell residence, Powell stopped him and stated that she did, in fact, recognize Appellant from the second line-up, but that she was afraid to testify.

Shegog v. Commonwealth, 142 S.W.3d 101, 103-04 (Ky. 2004).

On December 8, 2004, Shegog filed a motion for relief under RCr 11.42, alleging various grounds of ineffective assistance of counsel and prosecutorial misconduct. His motion was denied by the trial court without an evidentiary hearing on December 30, 2004. However, the Kentucky Court of Appeals vacated the trial court's order and remanded the case for an evidentiary hearing on June 2, 2006. On remand, and following the evidentiary hearing, the trial court entered an order denying Shegog's RCr 11.42 motion, based upon the following findings of fact:

1. On September 28, 2001, the Defendant, Kevin Shegog was indicted for Robbery in the First Degree. The Robbery occurred on May 28, 2001. The case was set for trial by jury.

2. The Hon. Theodore Knoebber was appointed to represent the Defendant. Prior to trial Attorney Dowell filed a motion for funding to hire an expert witness to attack the eyewitness identification. Off the record Judge Wehr advised Attorney Dowell that the law did not permit such eyewitness identification attacks and funding would not be available. Hon. Steven Dowell withdrew the motion.

3. Prior to trial the Hon. Steven Dowell requested that the Court require the Commonwealth to advise him if any witness had a criminal history. The Court overruled the motion. Defendant was granted funding to hire an investigator. An investigator was hired and did interview Steven Powell who identified the license plate. The witness was not asked about his criminal history. Attorney Dowell moved to suppress the eyewitness identification by Joy Powell out of court and in court; and to suppress still photos.

3. [sic] On April 2, 2002, the Defendant was tried. During the trial the Commonwealth presented the 911 tape of the Robbery in progress. The tape was authenticated by the 911 operator who took the call. The Commonwealth presented

2

two eyewitnesses to the crime.  Joy Powell made an in court identification.  She testified that she saw the Defendant prior to him putting a mask on his face.  The second witness, Steven Powell testified that he watched the robbery and then followed the robber.  He saw the robber, (a black male wearing a Indiana University jacket) get into a vehicle with the license plate "Shegog".  The Commonwealth presented 10 still photos of the robber recorded by the BP gas station surveillance tape.

4.  At trial Attorney Dowell did voir dire the jury.  He brought up issues concerning eyewitness identification.

5.  At trial Attorney Dowell had an opportunity and did cross examine Joy Powell and Steven Powell.

6.  At the conclusion of the evidence the jury found the Defendant, Kevin Shegog, guilty.  On June 13, 2002, the Defendant was sentenced to 20 years to serve.

7.  In December 2002 the Supreme Court of Kentucky ruled that expert testimony could be used to attack eyewitness identification. Commonwealth v. Christie, 98 S.W.3d 485 (Ky. 2002).

8. Sometime after his trial the Defendant learned that Steven Powell had a prior felony conviction arising out of Campbell County.  He was indicted on April 26, 2001 and convicted on January 16, 2002.

9. After a remand by the Kentucky Court of Appeals by Order of July 13, 2006, the Defendant filed various motions including a renewed motion for evidentiary hearing to support his Rcr [sic] 11.42 motion.

10. Hon. Anthony Bracke testified at the 11.42 hearing on January 19, 2007, that he had prosecuted Steven Powell. However, he did not disclose the information to the Defense because he was not aware of the prosecution until after the trial.

11. Attorney Dowell testified at the 11.42 hearing. Attorney Dowell testified that he withdrew the motion for an eyewitness identification expert because Judge Wehr told him that the law did not allow such.  He testified that he would not proceed with a motion not supported by law.  He testified that he wanted to keep his credibility with Judge Wehr for the sake of his clients.  He testified that he did not know at the time of trial that Steven Powell had a criminal history.  He had made a motion to compel the Commonwealth to produce that information and his motion was overruled.  He obtained an [sic] private investigator but the investigator did not advise him that Powell had a criminal history. He testified that he did not attack the 911 tape because the 911 operator who received the call came to trial to testify.  He testified that he did not subpoena the phone records because he believed the 911 tape was authentic.  He

testified that he did cross examine Joy Powell and Steven Powell.  He asked Joy Powell about her ability to identify African Americans.

(TR III 117-19.)

The trial court then made the following conclusions of law:

This Court does not believe that Attorney Steven Dowell [sic] performance was deficient and even if it was, Defendant has not proven that he was prejudiced.

Although Attorney Dowell withdrew his motion to hire an expert to attack the eyewitness identification, Attorney Dowell was told his motion would be not be sustained because it was not supported by law.  Attorney Dowell did not believe it was supported by law.  It was not until months after the trial a published decision was rendered ending the debate that such would be allowed.  After reviewing the cross examination of Joy Powell it appears that Attorney Dowell raised several key problems with cross racial eyewitness identification.  There is no evidence that the jury needed an expert to explain those problems.

Unlike the contention of the Defendant in his original motion to vacate that his attorney was aware of Steve Powell's criminal history, Attorney Dowell was not aware.  The Commonwealth testified that it was not aware.  There is no evidence that the Commonwealth intentionally withheld this information.  Even if Attorney Dowell should have discovered this information there is no evidence that the outcome of the trial would have been different.  The Commonwealth's case did not rest only on Steven Powell's identification of the Defendant or the "Shegog" license plate.  The Commonwealth had a 911 tape that was made while the robbery was in progress.  The Commonwealth had another witness, Joy Powell, who identified the Defendant.  The Commonwealth introduced 10 still photos of the robber taken from the BP gas station surveillance tape.

Last, there appears to be no reason Attorney Dowell should have subpoenaed phone records or attacked the authenticity of the 911 tape.  The 911 tape was authenticated by the 911 operator who took the call.

(TR III 120-21.)

The Kentucky Court of Appeals affirmed the trial court's decision in Shegog v. Commonwealth, 275 S.W.3d 728 (Ky. App., 2009), and his motion for discretionary review was denied by the Supreme Court of Kentucky on February 11, 2009.  Shegog filed another motion to vacate pursuant to CR 60.02 and RCr 11.42 on March 24, 2009.  That motion was denied by the trial

4

court, affirmed by the Kentucky Court of Appeals on May 21, 2010, and his motion for discretionary review was denied by the Supreme Court of Kentucky on November 10, 2010.

On December 21, 2010, he filed the present petition under 28 U.S.C. § 2254, challenging his conviction and sentence. [R. 1]. The Commonwealth responded on April 28, 2011, and Shegog filed a reply on August 31, 2011. In this action, Shegog asserts the following claims:

1.  The Commonwealth committed a Brady violation by failing to disclose a key witness, Steven Powell's recent felony conviction and his probationary status;

2.  The Trial court erred by failing to his suppress Shegog's in-court identification;

3.  Trial counsel rendered ineffective assistance when he withdrew his motion requesting funds to hire an expert witness on identification;

4.  The Trial court erred by allowing the Commonwealth to introduce ten (10) still photos into evidence in which the Commonwealth destroyed the surveillance video;

5.  The trial court denied Shegog a meaningful hearing on his request for new counsel and forced him to go to trial with unwanted counsel;

6.  Trial counsel failed to conduct a reasonable investigation into Steven Powell's criminal status;

7.  Trial counsel failed to conduct a reasonable and adequate investigation into Charles Spencer Akers, an alleged witness to the crime;

8.  Petitioner was denied the right to confront and cross-examine alleged witness to the robbery;

9.  The Commonwealth knowingly and/or intentionally used false or perjured testimony by claiming Charles Akers made the 911 call on a cell phone;

5

10.  Trial counsel failed to subpoena telephone records;

11.  Trial counsel erred by failing to take precautions to prevent petitioner from being viewed by jurors while wearing shackles;

12.  Trial court erred by refusing to direct the verdict where there was no physical evidence linking petitioner to the robbery;

13.  Trial court erred by refusing to direct the verdict on 1st degree robbery where the witness was equivocal in saying that the robber said he had a gun; and,

14.  Trial court erred when it failed to declare a mistrial following learning that a potential witness was a member of the jury pool.

For the reasons discussed below, Shegog's arguments allow him no relief, and it is recommended that his petition be denied.

<u>PROCEDURAL DEFAULT OF GROUNDS 7, 8, 9, 10 AND 14</u>

Before reviewing the merits of a habeas petition, the Court must consider any applicable "procedural-bar issue" which would prevent consideration of Shegog's claims on the merits. <u>Lambrix v. Singletary</u>, 520 U.S. 518, 524 (1997).  For example, if a petitioner procedurally defaults a claim in state court, "that procedural default carries over to federal court and precludes habeas review of that claim in federal court."  <u>Simpson v. Jones</u>, 238 F.3d 399, 406 (6th Cir. 2000).  A petitioner procedurally defaults a claim in state court if he or she fails to present that claim in accordance with a state's procedural rules.  <u>Id.</u> (citations omitted).  This principle is applicable only if the last state court rendering a judgment on the claim based its judgment on the procedural default. <u>Id.</u> (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

A petitioner cannot raise procedurally defaulted claims in a federal habeas proceeding unless

he or she can demonstrate "cause" for the procedural default and "actual prejudice" resulting from the alleged constitutional error.  <u>Murray v. Carrier</u>, 477 U.S. 478, 485-86 (1986);  <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977).  Alternatively, procedural default may be excused if a petitioner can show that "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  To come within this narrow second exception, a petitioner must make a showing of actual innocence, meaning factual innocence.  <u>McCleskey v. Sant</u>, 499 U.S. 467, 494-95 (1991);  <u>Dretke v. Haley</u>, 541 U.S. 386, 393-94 (2004).

The following claims raised by Shegog are subject to procedural default because they were not timely raised below, and were disposed of by the Kentucky Courts due to his failure to comply with state procedural rules.

7.  Trial counsel failed to conduct a reasonable and adequate investigation into Charles Spencer Akers, an alleged witness to the crime;

8.  Petitioner was denied the right to confront and cross-examine alleged witness to the robbery;

9.  The Commonwealth knowingly and/or intentionally used false or perjured testimony by claiming Charles Akers made the 911 call on a cell phone;

10.  Trial counsel failed to subpoena telephone records;

14.  Trial court erred when it failed to declare a mistrial following learning that a potential witness was a member of the jury pool.

<u>GROUNDS  EIGHT, NINE AND FOURTEEN</u>

In Ground Eight, Shegog alleges that he  was denied the right to confront and cross-examine an alleged witness to the robbery, Charles Akers. Ground Nine asserts that the Commonwealth

knowingly and/or intentionally used false or perjured testimony by claiming Charles Akers made the 911 call on a cell phone.   He claims that Akers' testimony was necessary to establish his innocence, because Akers did not call 911 from his cell phone.  He further states that the Commonwealth and his trial counsel fabricated a 911 recording in order to place Shegog at the scene of the crime.  He also claims that counsel failed to conduct any investigation into Akers.  Finally, in Ground Fourteen, Shegog asserts that the trial court erred when it failed to declare a mistrial following learning that a potential witness, Lt. Col. Hill, was a member of the jury pool.   These claims, all addressed on direct appeal, were rejected by the Kentucky Court of Appeals because Shegog had not timely raised the issues. [R. 11, Ex 1, pp. 278-84].     In doing so, the Court stated that "RCr 11.42 allows a party to file a motion to vacate, set aside or correct a sentence based on a collateral attack.  An RCr 11.42 motion 'is limited to [the] issues that were not and could not be raised on direct appeal.'" [R. 11, Ex. 1, p. 281].  The Court agreed with the trial court's ruling that Shegog's motion for relief was not timely, because his motion was not timely. [R. 11, Ex. 1, pp. 282-83].

Petitioner's federal claims were denied by the state court on  procedural grounds, and this Court cannot review "claims that a state court has declined to address, because of a petitioner's noncompliance with a state procedural requirement."  Howard v. Bouchard, 405 F.3d 459, 475 (6th Cir. 2005).  The Sixth Circuit has articulated a four-part test to determine whether a procedural default in state court carries over to federal court and precludes review of a claim:

> (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

<u>Id.</u> at 477.

Here, all four prongs are readily satisfied.  Kentucky RCr 11.42 and CR 60.02 are applicable state procedural rules that were actually enforced in Petitioner's case.  These rules provide for the timing and circumstances under which a Petitioner may seek post conviction relief.  As stated, Shegog failed to comply with these rules and they were enforced to prevent his presentation of the arguments regarding Charles Akers and Lt. Col. Hill.   Under the fourth prong, a state procedural rule is "adequate" if it is "firmly established and regularly followed."  <u>Wilson v. Mitchell</u>, 498 F.3d 491, 499 (6th Cir. 2007) (citations and quotations omitted).  A procedural rule is independent when it does not rely on federal law.  <u>Id.</u>  Here, RCr 11.42 and CR 60.02 do not rely on any federal law to foreclose appellate review, and have been regularly followed by Kentucky courts.  <u>Sanborn v. Commonwealth</u>, 975 S.W.2d 905, 909 (Ky. 1998)(<i>overruled on other grounds by</i> <u>Leonard v. Commonwealth</u>, 279 S.W.3d 151 (Ky. 2009)); <u>McQueen v. Commonwealth</u>, 948 S.W.2d 415 (Ky. 1997).  Finally, Petitioner failed to comply with these rules, and his claims, defaulted.

<u>GROUNDS SEVEN AND TEN</u>

While claiming that trial counsel performed ineffectively by failing to preserve a claim for review in state court might provide grounds for excusing default, the ineffective assistance claims Shegog presents at Grounds Seven and Ten are themselves subject to procedural default.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452-53 (2000); <u>Landrum v. Mitchell</u>, 625 F.3d 905, 916 (6th Cir. 2010).  A petitioner may procedurally default an ineffective assistance of counsel claim by failing to comply with the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A).  <u>Murray</u>, 477 U.S. at 488-89.  This rule requires a petitioner to "fairly present" the "substance" of his federal habeas claim to the state courts, so that the state judiciary may have the first opportunity to hear the claim.  <u>Lyons v. Stovall</u>,

188 F.3d 327, 331 (6th Cir. 1999).  If a petitioner does not present his claim to the state court, and

no state remedies are available, the unexhausted claim is procedurally defaulted.  Hannah v. Conley,

49 F.3d 1193, 1195-96 (6th Cir. 1995).

Kentucky law permits a defendant to file one post-conviction motion within three years of

final judgment.  RCr. 11.42(10).  All possible grounds for relief must be presented in that motion,

and the prisoner will be barred from later raising any issue "that could reasonably have been

presented."  RCr. 11.42(3).  The Court has reviewed Shegog's RCr. 11.42 motion to determine

whether he fairly presented his claims that trial counsel was ineffective.  In Grounds Seven and Ten,

Shegog argues that trial counsel failed to conduct a reasonable and adequate investigation into

Charles Spencer Akers, an alleged witness to the crime; and that trial counsel failed to subpoena

telephone records.  In his 11.42 motion, Shegog presented a number of ineffective assistance of

counsel claims, but none of them relate to trial counsel's failure to preserve these claims.

Accordingly, because no further state remedies are available, Shegog procedurally defaulted these

ineffective assistance of counsel claims.  Because there is no cause to excuse Petitioner's default,

his claims cannot be reviewed.

<u>STANDARD OF REVIEW</u>

Because Shegog filed his habeas petition on December 21, 2010, [R. 1] his remaining claims

are governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  It provides, in pertinent part:

> (d)      An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an

10

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Accordingly, federal habeas relief may be granted only where the state court decision is either (1) contrary to clearly established federal law or (2) involved an unreasonable application of clearly established federal law. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Id. A state court decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant a writ of habeas corpus "simply because the state court issued a decision that erroneously or incorrectly applies clearly established law; rather, the state court's application of law must have been objectively unreasonable." Ware v. Renico, 371 F.3d 862, 865 (6th Cir. 2004) (citing Williams, 529 U.S. at 410-11).

AEDPA imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), which effectively "demands that state-court decisions be given the benefit of the doubt." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). It is not the role of the reviewing court "to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Rather, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. All factual findings

11

made by a state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Post v. Bradshaw</u>, 621 F.3d 406, 413 (6th Cir. 2010).

ANALYSIS OF REMAINING CLAIMS

Respondent argues that Shegog's remaining claims are either without merit or raise issues of state law not cognizable in a federal habeas corpus proceedings. For the reasons discussed below, the Court agrees.

GROUND ONE

In Ground One, Shegog argues that the Commonwealth committed a <u>Brady</u> violation by failing to disclose that a key witness, Steven Powell, had recently been prosecuted by the same attorney for the Commonwealth, convicted of a felony, and sentenced to probation. Shegog argues that after he was convicted and sentenced, he learned of Steven Powell's recent criminal history. Shegog maintains that the Commonwealth's Attorney deliberately and intentionally withheld this information in order to prevent him from being able to effectively impeach Powell regarding his motive to assist the Commonwealth in exchange for favorable treatment in his own criminal case. [R. 1]. Although the information had not been disclosed, the Respondent argues that the Kentucky Court of Appeals correctly analyzed and denied relief based upon this claim under controlling federal law when it found that the information was not material to guilt or punishment, and therefore not subject to mandatory disclosure under <u>Brady</u>. The Kentucky Court of Appeals summarized the controlling law applicable to his claim as follows:

> Under <u>Brady</u>, the prosecution's intentional or unintentional non-disclosure of evidence favorable to a defendant violates his procedural due process rights where the evidence is material to guilt or punishment. <u>U.S. v. Agurs</u>, 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed2d 342 (1976). (1976). Undisclosed evidence is material if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable

12

probability is the probability sufficient to undermine the confidence in the outcome." Bowling v. Commonwealth, 80 S.W.3d 405, 410 (Ky. 2002), citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985).

[R. 11, Ex. 1, pp. 208-209).

Within this framework of legal analysis, the Court's decision was based on the fact that during the trial of the matter,

> During the commission of the robbery, Mr. Powell called 911 and gave a realtime description of Shegog's flight. A recording of this call was played at trial, and it was clear that Mr. Powell identified the robbery suspect's car as having a vanity license plate bearing the name "Shegog." Accordingly, the Commonwealth's non-disclosure of Mr. Powell's unrelated plea bargain was immaterial because the non-disclosure did not undermine the confidence of the jury's verdict.

[R. 11, Ex. 1,  pp. 209-210].

Shegog contends that the state court's analysis of the issue constituted an unreasonable application of clearly established federal law because under Giglio v. United States, 405 U.S. 150, 154-55 (1972), he was entitled to disclosure of the evidence to allow his impeachment of Powell. [R. 24, p. 8].  However, this Court cannot find that the state court's ruling was an unreasonable interpretation of controlling federal law.  The evidence at trial included the playing of the 911 recording of Powell reporting the incident and his pursuit of the robber.  The Court finds that the state court was not unreasonable in its application of controlling law, concluding that the undisclosed evidence is not material as there is not a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)."(A p. 208-210).

<u>GROUND TWO</u>

In Ground Two, Shegog asserts that the trial court erred by failing to suppress Mrs. Powell's in-court identification of him as the robber. Shegog asserts that under clearly established federal law

13

identification of a suspect based upon overly suggestive identification procedure employed by law enforcement can result in a due process violation sufficient to warrant suppression of the identification. <u>Foster v. California</u>, 394 U.S. 440, 442 (1969).   It is the likelihood of misidentification based on an overly suggestive identification procedure that is to be avoided. <u>Simons v. U.S.</u>, 390 U.S. 377, 384 (1968).   This is true of both in-court and out-of-court identifications. <u>Neil v. Biggers</u>, 409 U.S. 188, 198 (1972).  Shegog challenges Mrs. Powell's in court identification in that she was unable to identify the perpetrator during the initial photo-pack lineup, and was also hesitant about the second lineup. [R. 24, p. 12].  The facts surrounding this claim are recounted by the Kentucky Supreme Court as follows:

> In denying Appellant's motion to suppress, the trial court found that Powell "did have sufficient opportunity consistent with <u>Neil v. Biggers</u>, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401(1972),  to make an in-court identification of Appellant." Contrary to Appellant's brief, however, the trial court did grant the defense motion to suppress Powell's pretrial identification of Appellant due to the missing photo array. While Appellant theorizes that Powell's identification of him from the second photo line-up was solely the result of her husband seeing "Shegog" printed on the photo, no evidence of such is found in the record.   A review of the suppression hearing reveals the defense counsel asked very few questions regarding Powell's identification, such as whether "Shegog" was, in fact, on the photograph she viewed or whether her husband aided her in her identification.  As such, we conclude that Appellant's assertions on appeal are unfounded and unsupported by the record. Accordingly, we are of the opinion that based upon the evidence presented at the suppression hearing, the trial court did not err in permitting Powell's in-court identification.

<u>Shegog v. Commonwealth</u>, 142 S.W.3d 101, 106-07 (Ky. 2004).

The Respondent contends that the Petitioner does not show that the Supreme Court of Kentucky's ruling was contrary to or an unreasonable application of clearly established federal law. This Court agrees.  <u>Neil v. Biggers</u>, 409 U.S. 188 (1972), requires that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside

on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 197, quoting Simmons v. United States, 390 U.S. 377, 384 (1968).  In so holding, the Court in Neil reasoned that in Coleman v. Alabama, 399 U.S. 1 (1970),

> [W]e held admissible an in-court identification by a witness who had a fleeting but 'real good look' at his assailant in the headlights of a passing car.  The witness testified at a pretrial suppression hearing that he identified one of the petitioners among the participants in the lineup before the police placed the participants in a formal line.  Mr. JUSTICE BRENNAN for four members of the Court stated that this evidence could support a finding that the in-court identification was 'entirely based upon observations at the time of the assault and not at all induced by the conduct of the lineup.

Neil, 409 U.S.. at 197-98.

In the instant case, the Court properly relied on the standard articulated in Neil to find that, based upon the evidence before it, Mrs. Powell had a sufficient opportunity to make an in-court identification of Shegog:

> The day after the robbery, Powell was shown a photo line-up consisting of computer-generated images.  Powell stated at the time she was unable to identify the robber due to the quality of the pictures.  Police thereafter obtained an actual photograph of Appellant and compiled a second photo array.  Powell initially told Detective Thomas that she still could not identify the robber.  However, as Detective Thomas was getting into his car to leave the Powell residence, Powell stopped him and stated that she did, in fact, recognize Appellant from the second line-up, but that she was afraid to testify.

Shegog v. Commonwealth, 142 S.W.3d 101, 103-04 (Ky. 2004).  Therefore, the Court finds that the State Court's ruling was not contrary to, nor an unreasonable application of clearly established federal law.  The identification in this case was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Neil, 409 U.S. at 197.

15

<u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Grounds Three, Six, Eleven and Twelve all relate to allegations of ineffective assistance of counsel, and will be considered together below. Shegog alleges that trial counsel rendered ineffective assistance when he withdrew his motion requesting funds to hire an expert witness on identification (Ground Three); that trial counsel failed to conduct a reasonable investigation into Steven Powell's criminal status (Ground Six); that trial counsel erred by failing to take precautions to prevent petitioner from being viewed by jurors while wearing shackles (Ground Eleven); and that trial court erred by refusing to direct the verdict where there was no physical evidence linking petitioner to the robbery (Ground Twelve).

The standard applicable to claims of ineffective assistance of counsel requires that to prevail on such a claim, the burden is on the defendant to demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). With respect to the first element, the proper measure of attorney performance is simply reasonableness under prevailing professional norms. <u>Id.</u> at 688. Prejudice occurs where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" <u>Pough v. United States</u>, 442 F.3d 959, 966 (6th Cir. 2006) (citing <u>Whiting v Burt</u>, 395 F.3d 602, 617 (6th

16

Cir. 2005)).    Under the AEDPA, the Court must consider the state court's treatment of Shegog's claims, to determine whether their analyses were contrary to, or an unreasonable application of controlling federal law.  For the reasons set forth below, this Court believes the analyses are not, and Shegog will obtain no relief as a result.

Grounds Three and Six are claims of ineffective assistance of counsel, and shall be addressed together.  In Ground Three, Shegog claims that trial counsel rendered ineffective assistance when he withdrew his motion requesting funds to hire an expert witness on identification.   Shegog states that his first attorney made a motion seeking funds to retain an expert on eyewitness identification in order to cast reasonable doubt on Mrs. Powell's testimony and accuracy. [R. 24, p. 13].  Defense counsel later withdrew his motion, without a formal ruling, upon the trial judge's off-record discussions with counsel that the motion was not supported by law and that he would deny the motion. [R. 24, p. 13; VR 5; 1/19/07; 11:22:07].  As a result, Shegog argues that his counsel knew that the Commonwealth only had one eyewitness to identify him as the robber.  Counsel also allegedly knew that Mrs. Powell's testimony was "shaky" and armed with such knowledge, counsel failed to research the issue of expert testimony to attack witness identification, and failed to preserve the issue for appellate review.  Rather than "fight for a ruling and preserve the issue for review" counsel withdrew the motion without consultation or the permission of the Petitioner. [R. 24, p. 13.].

In analyzing Ground Three, the state court employed the correct Strickland standard when it considered Shegog's claim of ineffective assistance of counsel.  It denied his claim of ineffective assistance of counsel related to counsel's motion to withdraw request for expert funds on two grounds, after finding that: "When Shegog's trial began on April 2, 2002, the question of whether criminal defendants could obtain and introduce testimony from eyewitness identification experts

during trial was unsettled in our Commonwealth" [Appx., p. 206], and further stated that under the law in Kentucky, "defense attorneys are not required to move for the admission of evidence where its admissibility is still an open question.  Haight v. Commonwealth, 41 S.W. 3d 436, 448 (Ky. 2001)." [Appx. p. 207].    Therefore, failure to obtain a ruling from the court on the request, presumably a denial, cannot be said to be a constitutional deprivation. [Appx., p. 207].  In addition, in addressing the opinion in Christie, the "trial courts must consider the unique facts of each case when ruling on the funding and admissibility of such experts.  Christie, 98 S.W.3d at 492.  A guiding principle should be the strength or weakness of the evidence corroborating the eyewitness' positive identification of a defendant.  If the eyewitness' testimony is the only evidence supporting a defendant's guilt, a defendant should be permitted, if requested, to obtain an eyewitness identification expert.  Otherwise, the accuracy and reliability of guilty verdicts themselves cannot be assured.  Here, there was other evidence of Shegog's guilt." [Appx. p. 208].

In Ground Six, Shegog asserts that trial counsel failed to conduct a reasonable investigation into Steven Powell's criminal status.  Shegog argues that after trial, he discovered that Powell pled guilty to felony charges just prior to his testimony against the Petitioner and received a probated sentence.  This, Shegog claims, was critical information that the jury should have considered in determining the weight to give his testimony, and indicates a bias in favor of the Commonwealth. Shegog presents no authority for this point other than to argue that under Strickland, counsel was deficient, and the result, prejudicial. [R. 24, pp. 22-24].  On remand, and following the evidentiary hearing, the trial court entered an order denying Shegog's RCr 11.42 motion, based upon the following findings of fact:

> This Court does not believe that Attorney Steven Dowell [sic] performance was deficient and even if it was, Defendant has not proven that he was prejudiced.

18

***

Unlike the contention of the Defendant in his original motion to vacate that his attorney was aware of Steve Powell's criminal history, Attorney Dowell was not aware. The Commonwealth testified that it was not aware. There is no evidence that the Commonwealth intentionally withheld this information. Even if Attorney Dowell should have discovered this information there is no evidence that the outcome of the trial would have been different. The Commonwealth's case did not rest only on Steven Powell's identification of the Defendant or the "Shegog" license plate. The Commonwealth had a 911 tape that was made while the robbery was in progress. The Commonwealth had another witness, Joy Powell, who identified the Defendant. The Commonwealth introduced 10 still photos of the robber taken from the BP gas station surveillance tape.

(TR III 120-21.).

Likewise, a review of the state court's ruling relative to Ground Six, that counsel was ineffective for failing to discover Steven Powell's criminal history, was not contrary to or an unreasonable application of federal law. In order to have been deficient, counsel's performance must have been below an objective standard of reasonableness and that deficient performance must have prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In the instant case, a witness, Steven Powell identified the Defendant and the "Shegog" license plate. In addition, the Commonwealth had a 911 tape that was made while the robbery was in progress, and another witness, Joy Powell, identified the Defendant. Finally, the Commonwealth introduced 10 still photos of the robber taken from the BP gas station surveillance tape. [Tr. III 120-21]. Thus the identification of Shegog as the individual responsible for the crimes committed in this action was supported by far more than merely circumstantial evidence. Therefore, any ineffectiveness of counsel in withdrawing his motion for funds to hire an expert on eyewitness identification issues resulted in no prejudice to the defendant. Therefore, Shegog's claim of ineffective assistance of counsel for withdrawing his motion for funds to hire an expert is without merit.

In Ground Eleven, Shegog argues that the trial court erred by failing to take precautions to prevent petitioner from being viewed by jurors while wearing shackles. Shegog argues that a panel of 20-30 jurors witnessed him being escorted from the jail to the courthouse by law enforcement while shackled and handcuffed.  In addition, the trial court did not voir dire the jury on the issue as requested and did not give the jury a curative instruction.  Shegog maintains that "The right of the defendant to appear before the jury that will try him without shackles or restraints is a rule that predates the United States Constitution. See Deck v. Missouri, 544 U.S. 622, 626-627 (2005). Visible shackling of a defendant undermines a defendant's presumption of innocence, hinders a defendant's ability to communicate with his attorney and negatively impacts the dignity of the judicial process. Id., at 630-632; Estelle v. Williams, 425 U.S. 503, 505 (1976). While there are some instances where restraining or shackling a defendant in court may be necessary, such measures should only be taken where justified by an essential state interest specific to each trial. Holbrook v. Flynn, 425 U.S. 475 U.S. 560, 568-69 (1986). When the state trial judge learned that the potential jurors had seen Petitioner in shackles, there was no finding that this was essential to protect a specific state interest." [R. 24, p. 29].

On the other hand, the Respondent maintains that "This issue was fully briefed before the Supreme Court of Kentucky [R. 11, Ex.1,pp. 41-45, 77-78] and it found that the trial court had properly ruled on the motion for continuance based on the possibility that Shegog had been observed in shackles by some of the potential jurors." [R. 11, Ex. 1, pp. 92-93.] The Kentucky Supreme Court held that Shegog was offered the opportunity to voir dire the jury panel and that it was refused. [R. 11, Ex. 1, pp. 92-93.]    The Supreme Court of

20

Kentucky then held that the trial court did not abuse its discretion in denying the motion to continue. [R. 11, Ex. 1, p. 93.]  A question of an alleged error of state law rarely serves as a basis for habeas corpus relief and does so only when the petitioner was denied fundamental fairness in the trial process. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991); Clemmons v.Sowders, 34 F.3d 352, 357-58 (6th Cir., 1994).  In this action, because Shegog was given the opportunity to voir dire potential jurors regarding the issue, and any potential bias that may have resulted, it cannot be said that he was denied fundamental fairness in the trial process.  Further, the rulings of a state's highest court with respect to state law are binding on the federal courts.  Smith v. Sowders, 848 F.2d 735, 738-39 (6th Cir., 1988).  Therefore, the Kentucky Supreme Court's ruling that the trial court did not abuse its discretion in denying his motion to continue is not unreasonable, and provides no relief for Shegog.

GROUNDS TWELVE AND THIRTEEN

In Grounds Twelve and Thirteen, Shegog presents claims of insufficient evidence to support his conviction, specifically, that: (1) the trial court erred by refusing to direct the verdict in his favor where there was no physical evidence linking him to the robbery; and (2) that the trial court erred by refusing to direct the verdict in his favor on the First  degree robbery charge where the witness was equivocal in saying that the robber said he had a gun. Although a general prohibition exists concerning federal habeas review of issues of state law,  'insufficiency of the evidence' claims such as those brought by Shegog are cognizable under 28 U.S.C. § 2254.  See, e.g., Brown v. Palmer, 441 F.3d 347, 350 - 51 (6th Cir. 2006).  A federal court is required to defer to the state court's findings of fact unless the petitioner

shows by clear and convincing evidence that the state court's recitation of the facts is

erroneous. 28 U.S.C. § 2254(e)(1);  Loveday v. Davis, 697 F.2d 135, 138 - 40 (6th Cir.

1983).  In the instant case, the facts, as summarized by the Kentucky Supreme Court, and

unchallenged by the petitioner, are as follows:

> Appellant's convictions stem from a robbery that was committed on May 28, 2001,
> at a BP gas station in Highland Heights, Kentucky.  Joy Powell, a witness who was
> inside the gas station at the time of the robbery, stated that she observed an African
> American male wearing a red and white sports jacket and a nylon stocking on his
> head pass by the front glass window and then enter the store.  Once inside, Powell
> stated that the man grabbed her and, as he pulled the stocking down over his face,
> announced that he had a gun.  Powell was ordered behind the counter with the store
> clerk and both were told to lie on the floor.  After taking the money from the register,
> the robber fled the scene.  Powell's husband Steve, who had been pumping gas,
> observed the man get into a dark colored vehicle with a vanity license plate that read
> "Shegog."

> * * *

> The day after the robbery, Powell was shown a photo line-up consisting of
> computer-generated images.  Powell stated at the time she was unable to identify the
> robber due to the quality of the pictures.  Police thereafter obtained an actual
> photograph of Appellant and compiled a second photo array.   Powell initially told
> Detective Thomas that she still could not identify the robber.  However, as Detective
> Thomas was getting into his car to leave the Powell residence, Powell stopped him
> and stated that she did, in fact, recognize Appellant from the second line-up, but that
> she was afraid to testify.

Shegog v. Commonwealth, 142 S.W.3d 101, 103-04 (Ky. 2004).

The state court, when addressing Shegog's arguments on insufficient evidence, applied the

following analysis, stating:

> Appellant argues that he was entitled to a directed verdict on all charges since the
> Commonwealth produced no credible evidence connecting him to the robbery.
> Appellant contends that his conviction is based only upon an unreliable identification
> and evidence that a car bearing the same vanity license plate was involved in the
> crime.

> When ruling on directed verdict motions, a trial court must assume evidence to be
> true, taking all evidence in the light most favorable to the Commonwealth, and

> leaving questions of weight and credibility to the jury.  Commonwealth v. Benham,
> Ky., 816 S.W.2d 186 (1991).  Further, on appeal, "the test of a directed verdict is, if
> under the evidence as a whole, it would be clearly unreasonable for a jury to find
> guilt, only then the defendant is entitled to a directed verdict of acquittal." Id. At 187.
> (Citing Commonwealth v Sawhill, Ky., 660 S.W.2d 3 (1983)).  In the case at bar, the
> Commonwealth produced more than a mere scintilla of evidence and therefore, there
> was no error on the part of the trial court in its ruling on this motion. The
> Commonwealth satisfied its burden to withstand a directed verdict.

Id. at109.

This analysis, considering the unchallenged factual statement and the law articulated by the

state court, comports with the standards set forth in controlling federal law.

The United States Supreme Court has held that the Due Process Clause of the Fourteenth

Amendment "forbids a State to convict a person of a crime without proving the elements of that

crime beyond a reasonable doubt."  Fiore v. White, 531 U.S. 225, 229 (2001).  When asserting that

a conviction was based on insufficient evidence, a petitioner must show that "no rational trier of fact

could have found proof of guilt beyond a reasonable doubt" based on the evidence adduced at trial.

Jackson v. Virginia, 443 U.S. 307, 324 (1979);  Brown, 441 F.3d at 351.  The evidence must be

viewed in light most favorable to the prosecution. Jackson, 443 U.S. at 319.  A "reasonable doubt"

has been described as one "based on reason which arises from the evidence or lack of evidence."

Johnson v. Louisiana, 406 U.S. 356, 360 (1972).  Habeas corpus relief will be appropriate only when

the Court finds, after examining all of the evidence in a light most favorable to the prosecution, that

no rational trier of fact could have found the essential elements of the charged offense beyond a

reasonable doubt. Jackson, 443 U.S. at 319. "[A reviewing] court faced with a record of historical

facts that supports conflicting inferences must presume –even if it does not affirmatively appear in

the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must

defer to that resolution." Id.

In considering the evidence as required by federal law, the state court's ruling was reasonable, drawing all inferences in favor of the Commonwealth. Joy Powell, a witness stated that she observed an African American male wearing a red and white sports jacket and a nylon stocking on his head pass by the front glass window and then enter the store. The man grabbed her as he pulled the stocking down over his face and stated that he had a gun. The robber took the money from the register and fled the scene. Powell's husband observed the man get into a dark colored vehicle with a vanity license plate that read "Shegog." Following a photo line-up the next day, Powell stated to a detective that she recognized Appellant from the line-up. Viewing this evidence in the light most favorable to the prosecution, see <u>Jackson,</u> 443 U.S. at 319, and reserving any issues of weight or credibility of the evidence and/or witnesses to the jury's consideration, the state courts ruling that the Commonwealth satisfied its burden to withstand a directed verdict, was not contrary to, or an unreasonable application of federal law.

<u>CLAIMS OF REVERSIBLE ERROR</u>

<u>GROUND FOUR</u>

In Ground Four, Shegog argues that the trial court erred by allowing the Commonwealth to introduce ten (10) still photos into evidence in which the Commonwealth destroyed the surveillance video. Essentially, Shegog argues here that he was prejudiced by the state prosecutor's failure to secure the entire surveillance video while showing only selected portions of the video to the jury. The Respondent contends that as a ruling of a state's highest court with respect to state law, the state's ruling is binding on the federal courts. <u>See</u>  <u>Smith v. Sowders</u>, 848 F.2d 735, 738-39 (6th Cir. 1988). In addressing Shegog's contention of error regarding the admission of photographs, the Kentucky Supreme Court held:

While Appellant maintains that he was prejudiced by the admission of the photographs, we are of the opinion that any error was harmless at best, especially in light of the missing evidence instruction.  Although Appellant was prevented from introducing any other frames from the surveillance tape, none that were introduced showed Appellant.  In other words, while Appellant could not necessarily contradict Powell's testimony with the surveillance tape, the still photos did nothing to bolster her testimony since they did not show any images of the robber without his face mask.    As the trial court found, Appellant offered no evidence that the surveillance tape was purposely erased.  "Absent a showing of bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process."  Kirk v. Commonwealth, Ky., 6 S.W.3d 823,826 (1999), citing Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281(1988).

Shegog v. Commonwealth, 142 S.W.3d 101, 107-108 (Ky. 2004).

 The presentation of an alleged error of state law can only rarely serve as a basis for habeas relief, and only when a petitioner was denied fundamental fairness in the trial process. Estelle v. McGuire, 502 U.S.62 (1991); Clemmons v. Sowders, 34 F.3d 352, 357-58(6th Cir., 1994).   A review of this claim does not indicate that the state court erred in applying its own evidentiary rule, thereby rendering the state procedure so fundamentally unfair as to deprive Shegog of substantive due process. See Estelle, 502 U.S. at 67-68.  As a result, his that the still photographs were introduced in error is without merit.

<u>GROUND FIVE</u>

Finally, Shegog argues in Ground Five that the trial court denied him a meaningful hearing on his request for new counsel and forced him to go to trial with unwanted counsel. Shegog contends that he had filed several bar complaints against his attorney because his attorney was not investigating the case, keeping him informed, or filing proper motions, and as a result, he asserts that his attorney refused to put for the evidence in his possession that refuted the Commonwealth's case. [R.24].   Generally, an indigent defendant has not right to have a particular attorney appointed to represent him, and "good cause" must be demonstrated to justify substitution of counsel. United

States v. Saldivar-Trujillo, 380 F.3d 274, 277 (6th Cir. 2004)(quoting United States v. Iles, 906 F.2d

1122, 1130 (6th Cir. 1990). When presented with a motion to substitute counsel, a district court will

be reversed only for abuse of discretion. Id. The Court must consider factors such as the timeliness

of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the

conflict between the attorney and client was so great that it resulted in a total lack of communication

preventing an adequate defense . . . Further, [c]onsideration of such motions requires a balancing

of the accused's right to counsel of his choice and the public's interest in the prompt and efficient

administration of justice. Id. at 277-78; see also United States v. Green, 388 F.3d 918, 921-22 (6th

Cir. 2004).

The court's review of this issue reflects that the state Court applied the proper standard in

addressing Shegog's request for appointment of substitute counsel. Specifically, the state court

conducted a hearing on the issue, and allowed Shegog the opportunity to present evidence and fully

inform the trial court of the basis for his motion. Shegog v. Commonwealth, 142 S.W.3d 101, 104

(Ky. 2004). In considering Shegog's claims that court appointed counsel were not representing him

adequately, the Court considered the legal standard, articulated as follows:

> In order to warrant a substitution of counsel during trial, "the defendant must show
> good cause, such as a conflict of interest, a complete breakdown of communication
> or an irreconcilable conflict which leads to an apparently unjust verdict." United
> States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972), cert. denied 410 U.S. 926, 35
> L. Ed. 2d 587, 93 S. Ct. 1357, 93 S. Ct. 1358, 93 S. Ct. 1386, 93 S. Ct. 1403 (1972).
> See also United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982); Maynard v.
> Meachum, 545 F.2d 273, 278 (1st Cir. 1976); United States v. Young, 482 F.2d 993,
> 995 (5th Cir. 1973). Appellant contends that once he filed the bar complaint against
> Dowell, an actual conflict of interest arose and, thus, the trial court's failure to fully
> inquire into the conflict and permit Appellant to obtain new counsel violated his
> rights under the Sixth Amendment to the United States Constitution and Section 11
> of the Kentucky Constitution.

Importantly, the trial court did not deprive Appellant of the right to secure private counsel of his own choosing. (Citation omitted).  The trial court merely ruled that such counsel, if obtained was required to enter an appearance prior to the scheduled trial date.  Further, contrary to Commonwealth's argument, this issue is not controlled by <u>Faretta v. California</u>, 422 U.S. 806 (1975), since Appellant never asserted the desire to represent himself.

Nevertheless, we do not agree with Appellant that the filing of a bar complaint against a public defender automatically entitles a defendant to new counsel.  If such were the case, trial delays due to counsel substitutions would be endless.  Indeed, as the trial court herein concluded, Appellant's assertion that he would have the money to hire private counsel was a tactical strategy to again delay the start of his trial.  A defendant is not entitled to the dismissal of his counsel and the appointment of a substitute "except for adequate reasons or a clear abuse by counsel. <u>Fulz v. Commonwealth</u>, Ky., 398 S.W.2d 881 (1966).  Here, there were none.

We are of the opinion, as was likely the trial court, that Appellant's claim that his family was going to retain private counsel was, at best, speculative.  The trial court clearly determined that Dowell was providing good representation and that Appellant's allegations of ineffective assistance of counsel were refuted by the record.  Indeed, it is virtually a universal complaint by all defendants that their counsel has not adequately kept them informed.  Nevertheless, Appellant has failed to demonstrate in any way that he was prejudiced by Dowell's performance, and a review of the record belies the conclusion that different counsel would have performed better or achieved a different result.  No error occurred.

Shegog v. Commonwealth, 142 S.W.3d 101, 105-106 (Ky. 2004).

The court's review of this issue reflects that the state court applied the proper precedent and rendered a decision consistent with federal law.  Following a hearing on his concerns, the state trial court denied Shegog's request for appointment of substitute counsel, after determining that his allegations of ineffective assistance of counsel were refuted by the record and that he  failed to demonstrate prejudice by counsel's performance.  Simply, Shegog failed to demonstrate "good cause" such as a complete breakdown in communication sufficient to justify justify substitution of counsel.  See <u>United States v. Saldivar-Trujillo</u>, 380 F.3d 274, 277 (6th Cir. 2004)(quoting <u>United States v. Iles</u>, 906 F.2d 1122, 1130 (6th Cir. 1990).  His claims presented in this regard provide no

relief from his conviction.

CONCLUSION

For the reasons set forth above, it is recommended that Shegog's Petition for a Writ of

Habeas Corpus [R. 1] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing

this Report and Recommendation.  Specific objections to this Report and Recommendation must

be filed within fourteen (14) days from the date of service thereof or further appeal is waived.

United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815

(6th Cir. 1984).  General objections or objections that require a judge's interpretation are

insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir.

2004); Miller V. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

This the 27th day of July, 2012.



Signed By:

Edward B. Atkins

United States Magistrate Judge